Application of Cecil **GREER.**
Patent Appeal No. 9080.

United States Court of Customs and
Patent Appeals.
Sept. 20, 1973.

Robert C. Garber, Harvey B. Jacobson, Washington, D. C., attys. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejections under 35 U.S.C. §§ 102 and 112 of the claim in appellant's application [1] for a plant patent entitled "Bermuda Grass Plant." We affirm that decision insofar as it is based on § 112.

*Invention*

Appellant's invention relates to a variety of Bermuda grass found growing in a bed of, and allegedly distinct from, a variety of Bermuda grass known as Zimmerly Select. The particular characteristics relied upon by appellant to distinguish his grass from known varieties of Bermuda grass are set forth in the claim which reads as follows:

1. A new and distinct variety of BERMUDA GRASS PLANT, substantially as shown and described, characterized particularly by its outstanding reproductive properties, its large, glossy rhizomes, its high level of resistance to common Bermuda grass diseases and the large percentage of above ground stolons which remain green in freezing weather.

1. Serial No. 731,663 filed May 23, 1968.

In support of these characteristics, a number of observations were made in the specification and it is around the nature of these observations that the controversy in this case revolves.

With regard to the "outstanding reproductive" characteristics of the claimed grass, the specification, in substance, indicates that when the stolons[2] of the grass are planted they cover the soil surface as quickly as do the rhizomes[2] when planted (in fact faster).

In support of the claim that the plant produces "large, glossy rhizomes" the specification states that "some are almost as large in diameter as a lead pencil." Additionally it states that they "penetrated the soil from one inch to two and one-half inches deeper than Coastal Bermuda[3] rhizomes grown under identical conditions." The specification also indicates that by visual observation of rhizomes, it could be seen that the rhizomes of the claimed grass were larger than those of other Bermuda grasses grown the same way. However, no actual measurements are reported.

To support the claim that the new grass is distinct from others because of the large percentage of stolons remaining green in freezing weather, the specification indicates that a test plot of the claimed grass remained green under the same winter conditions where Zimmerly Select, Coastal Bermuda, and native Bermuda had become dormant.

The claim that the grass is disease resistant is based on the failure of the applicant and other growers of his grass to observe disease in plots of the grass. However, the specification also reveals that other varieties of Bermuda grass grown at the same locations also remained free of disease.

*Rejection*

In conformance with the usual procedure for the examination of applications for plant patents, the application was submitted by the Patent Office to the Department of Agriculture for its evaluation of the assertions made in the specification supporting the claim that the grass was a distinct and new variety of plant. In due course a report was provided by the Department of Agriculture to the Patent Office. It is reproduced in full below:

1. The claimed grass is reported as superior to five other varieties of bermudagrass in its ability to withstand freezing weather. No comparative data were included in the application to show the relative winter survival of the claimed grass vs. other varieties. In addition to the lack of survival data, it [is] not clear from the application that all varieties were planted and managed in the same fashion.

2. The claimed grass is reported to have a high level of resistance to common bermudagrass diseases. It is stated, however, that no disease was noted on bermudagrass varieties grown at the same locations as the claimed grass. This information does not support the claim for disease resistance as the named varieties differ greatly in their reaction to disease (from highly susceptible to highly resistant).

3. It is stated that the rhizomes of the claimed grass penetrate to a greater depth than those of Coastal bermudagrass. This comparison should include Zimmerly Select as this was the original source of the claimed grass.

4. No comparative measurements of rhizome diameters are included be-

---

2. Webster's Third New International Dictionary, 1971 edition, provides the following definitions: *stolen*—a horizontal branch from the base of a plant that is either above or below ground and produces new plants from buds at its tip or nodes (as in the strawberry) ; *rhizome*—a more or less elongate stem or branch of a plant that is often thickened or tuber shaped as a result of deposits of reserve food material, is usu. horizontal and underground, produces shoots above and roots below, and is distinguished from a true root in possessing buds, nodes and usu. scalelike leaves—called also *rootstalk*.

3. Another variety of Bermuda grass.

cause comparable material was not available in test plots. Since diameter of rhizomes is a distinguishing characteristic of the claimed grass, comparative plots should be established to obtain these data.

5. A larger percentage of stolons of the claimed grass apparently stay green in freezing weather, in comparison with widely distributed bermudagrass varieties. The conditions under which these observations were made should be described. All varieties must be grown under comparable conditions, i. e., age of stand, irrigation, soil fertility, and clipping or grazing practice. Information on stolen color for the claimed grass and bermudagrass varieties could be given either as a percentage of stolon length or as percentage of stolons that remain green. The description of the claimed grass is not adequate to determine if it differs from other named bermudagrasses.

This report and the examiner's own observation that the reproductive characteristics of the grass were not compared to those of any known Bermuda grass led him to conclude that the claim should be rejected under § 112 for the reason that it is:

\* \* \* unsupported by a clear and complete disclosure with respect to the allegedly distinguishing characteristics of (1) faster reproduction, (2) frost and disease resistance, (3) rhizome penetration, (4) rhizome diameter and (5) rhizome color in freezing weather.

The claim was also rejected under 35 U.S.C. § 102(a) for the reason that it was:

\* \* \* drawn to a variety of bermudagrass which is patentably indistinguishable from common bermudagrass. In the absence of a complete botanical description of the instant variety, and detailed comparisons with common as well as known varieties, it cannot possibly be determined that patentable novelty exists.

The board in affirming the rejection under § 102(a) gave, in substance, the same reason as the examiner. In support of its conclusion that the rejection under § 112 should also be affirmed the board cited the following excerpt from the legislative history [4] of the Plant Patent Act of 1930:

Modern methods of identification, together with such amplification thereof as may reasonably be expected, will render it possible and practicable to describe clearly and precisely the characteristics of a particular variety. When this can not be done by an applicant for a patent, the variety is not clearly distinguishable as a distinct variety, and no patent would issue.

From it the board reasoned as follows:

Accordingly, we believe it to be clear that the instant failure to adequately differentiate the claimed grass from other known varieties of Bermuda grass must result in the denial of a patent. We will sustain the rejection.

### Opinion

Appellant has attacked the soundness of the board's decision principally on the ground that § 162 relieves the applicant for a plant patent of the strict requirements of § 112. Pertinent to this argument, § 162 reads, in part, as follows:

No plant patent shall be declared invalid for noncompliance with section 112 of this title if the description is as complete as is reasonably possible.

In view of the statute, we must agree with appellant that a disclosure containing a description not fully in compliance with § 112 might still be adequate under § 162. In this regard this court, recognizing present technological limitations, has concluded that there is no require-

4. Senate Committee Report, Plant Patents, April 2, 1930, 71st Congress, 2d Session.

ment for a how-to-make disclosure in a plant patent application. See In re Le-Grice, 301 F.2d 929 at 944, 49 CCPA 1124 at 1145, 133 USPQ 365 at 378 (1962).

Nevertheless, we do not agree that it was contemplated by Congress that its incorporation into R.S. 4888 of the matter which is the statutory predecessor to § 162 would operate to allow an applicant to allege characteristics which might be capable of distinguishing one variety of plant from another without sufficient disclosure to establish that these characteristics are indeed present in the claimed plant and absent in the varieties to which it is most closely related. In fact, the portion of the legislative history relied upon by the board makes it clear that the applicant bears the burden of clearly and precisely describing those characteristics which define the new variety.

In the instant case we do not doubt that Bermuda grass having *different* reproductive properties, disease resistance, etc., when compared to the same properties of known varieties, would be a distinct variety of Bermuda grass. However, if, as is true in this case, the characteristics chosen to define the new plant are meaningless unless compared with predecessor plant varieties, it is incumbent upon the applicant to provide information of such a character that a meaningful comparison can be made. It is our view that the Patent Office in this case was justified in its conclusion that the criteria used to support the claim did not allow for such a meaningful comparison.

In view of our determination that appellant's claim was properly rejected under § 112, we do not reach the merits of the board's decision relative to the rejection under § 102. For the foregoing reasons the decision of the board is affirmed

Affirmed.