United States Court of Appeals,

Fifth Circuit.

No. 92-5133.

John R. NICHOLS and Irene Nichols, et al., Plaintiffs,

v.

PETROLEUM HELICOPTERS, INC., et al., Defendants.

Jimmie John MILLER, JR. and Jolain Miller, Plaintiffs-Appellants,

v.

PETROLEUM HELICOPTERS, INC., et al., Defendants-Appellees.

March 28, 1994.

Appeal from the United States District Court for the Western District of Louisiana.

Before POLITZ, Chief Judge and GARWOOD, Circuit Judge, and PARKER[*], District Judge.

ROBERT M. PARKER, District Judge:

In this consolidated case arising in admiralty, Plaintiff-Appellant Jimmie John Miller, Jr. (Miller) filed suit against Defendant-Appellee Petroleum Helicopters, Inc. (PHI) for injuries allegedly sustained in a helicopter crash in the Gulf of Mexico on July 14, 1988. Following PHI's pre-trial stipulation of liability, the only issue at trial was damages. The sole legal question was whether Miller's wife (Jolain Miller) had a claim for loss of consortium under general maritime law. The district court held that damages for loss of consortium were not recoverable under general maritime law, but awarded Miller $12,000 for general

---

[*]Chief Judge of the Eastern District of Texas, sitting by designation.

1

damages and $2,569.13 for economic loss.  The Millers appeal the court's awards, the findings of fact upon which they were based, and the court's holding that loss of consortium is not cognizable under general maritime law.  We AFFIRM.

BACKGROUND

On July 14, 1988, Jimmie Miller, an employee of Forest Oil Company, was enroute with other crew members to an oil platform in the Gulf of Mexico, aboard a PHI helicopter.  Upon takeoff from a platform on which the helicopter stopped to drop off some of the crew members, the helicopter crashed in Vermilion Block 255B, some eighty miles off the shore of Louisiana, killing one of the eight crew members on board.  Six of the helicopter occupants filed personal injury actions which were consolidated;  only the present action was litigated.

Prior to trial, PHI stipulated to liability and Miller waived claims for punitive damages.  The issue before the district court was the amount of Miller's damages for physical and emotional suffering, and for economic loss.  Miller claimed the accident caused two ruptured discs, which led to anterior lumbar fusion surgery and which left him "permanently disabled" from heavy labor.

The district court's damage assessment was complicated by two factors.  First, Miller had been employed in an extremely heavy manual labor occupation which had caused a history of physical problems and had led to repeated medical treatments.  Second, there was evidence to show that, as early as 1983, "hereditary arthritic changes had already begun ... and therefore were not caused by the

2

accident." As a result, the court was left to determine to what degree the helicopter crash contributed to Miller's injuries. Specifically, the threshold question was whether the helicopter crash caused a herniated disc or whether it merely aggravated pre-existing problems. The same analysis was necessary for the emotional suffering claim as Miller had abused both drugs and alcohol in the past.

The district court concluded that the preponderance of the evidence did not show Miller had suffered a herniated disc as a result of the accident. At worst, the crash merely caused a back strain and pain due to a pre-existing osteoarthritic condition. The court decided that the pain Miller had suffered would be adequately compensated by $9,000.

The conclusion that the accident caused a mere back strain was also dispositive of the district court's award for economic loss. The court awarded one month's lost wages because it believed Miller's long term physician, who seemed to have felt that Miller could soon return to work. As the court noted, its evaluation was substantiated by all but one of the orthopedists and neurologists that examined Miller. The findings and awards were influenced by the court's view of Miller's credibility as a witness.

As to Miller's claim of psychological damage, the district court found that the evidence was again far from clear concerning the cause of Miller's problems. The court noted Miller's pre-accident substance abuse, beginning in high school and continuing while he worked for Forest Oil, and his short stay in a

3

detoxification program after the accident.  Although causation of Miller's mental problems was tenuous, the court found that some depression was independently caused by the accident.  Accordingly, the court awarded Miller $3,000 for his mental suffering.

DAMAGE FINDINGS

The standard of review to apply in our inquiry into all findings of fact, including damage awards, is a clearly erroneous standard.  See *Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 389, *reh'g den'd,* 832 F.2d 1264 (5th Cir.1987).  Damage awards will not be disturbed unless "we are convinced that an error has been committed."  *Id.* at 389-90.[1]  Furthermore, "[m]ere disagreement with the district court's analysis of the record is insufficient, and we will not reverse ... [a finding] "although there is evidence to support it, [unless] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' "  *Graham v. Milky Way Barge, Inc.,* 824 F.2d at 388 (citing *United States v. Gypsum,* 333 U.S. at 395, 68 S.Ct. at 542) (emphasis added).

The district court concluded that Miller was not credible in any of his assertions, whether to the court or to the doctors. Miller implies by his laundry list of factual discrepancies or "omissions" that the court would not have reached this credibility assessment but for its pervasive errors in findings.  As we have

---

[1]See *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, *reh'g den'd,* 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948) (holding that fact findings are reversed only where "clearly erroneous").

4

said before, "this Court should be wary of attempting to second guess the district court, which has the decided advantage of first hand experience concerning the testimony and evidence presented at trial." *Graham v. Milky Way Barge, Inc.,* 824 F.2d at 388. Following this sound advice and upon review of the record, this Court cannot say that it has a "definite and firm conviction" that error has been committed. The district court was under no obligation to accept Miller's justifications and explanations once it concluded that Miller was not credible. The evidence does not show that either this assessment or the fact findings were clearly erroneous. As a result, the damage awards which were predicated upon these findings cannot be an abuse of discretion.

## LOSS OF CONSORTIUM

The recoverability of damages for loss of consortium is a legal question that is subject to *de novo* review. *Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Michel v. Total Transp., Inc.,* 957 F.2d 186, 191 (5th Cir.1992).

Miller contends that the district court erred in finding that general maritime law precludes his claim for loss of consortium. Although Miller recognizes that *Miles v. Apex Marine Corp.*[2] prevents such a claim in a seaman's wrongful death suit, he argues

---

[2]498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). This rule has been extended by this Court to apply to a seaman's personal injury suit as well. See *Michel v. Total Transp., Inc.,* 957 F.2d 186, 191 (5th Cir.1992); and *Murray v. Anthony J. Bertucci Const. Co., Inc.,* 958 F.2d 127, 131-32 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992).

5

that in a case involving a non-seaman, or longshoreman such as himself, recovery for loss of consortium, established in *Sea-Land Services, Inc. v. Gaudet*[3], has not been limited.  Miller contends that the purpose in disallowing seamen a remedy for loss of consortium in *Miles* was to bring uniformity between the remedies available under general maritime law, the Jones Act, and the Death on the High Seas Act (DOHSA).  Miller argues, however, that because neither the Jones Act nor DOHSA applies to longshoremen, the uniformity purpose has no effect.  Therefore, any limitations imposed by the Supreme Court's decision in *Miles* have no effect on a longshoreman's loss of consortium claim.

In *Gaudet,* the Supreme Court held that the decedent's wife could recover for loss of consortium in a maritime wrongful death action involving a longshoreman.[4]  Four years later, the Court limited its holding in *Gaudet* to deaths occurring in territorial waters.  *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).  The Court concluded that in actions involving death on the high seas, recoverable damages were specifically limited to pecuniary losses under DOHSA.  Thus, a dependent cannot recover loss of consortium.  This decision in *Higginbotham* created an inconsistency between deaths in territorial waters, where loss of consortium was available under *Gaudet,* and

---

[3]414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), *reh'g den'd,* 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974).

[4]Although the Supreme Court characterized the plaintiff's claim in *Gaudet* as a loss of society, this Court interprets a claim for loss of society to be substantially the same as a claim for loss of consortium.

deaths on the high seas.

Only two years later, in *American Export Lines, Inc. v. Alvez*[5], the Supreme Court held that an injured harbor worker's wife could recover for loss of consortium under general maritime law. The Court relied on *Gaudet* in extending the recovery that was already available to the dependents of longshoremen who were killed within the scope of employment to injured longshoremen's dependents. *American Export Lines, Inc. v. Alvez,* 446 U.S. at 281, 100 S.Ct. at 1677.

The Supreme Court attempted to remedy the anomaly it had created between *Gaudet* and *Higginbotham* through its decision in *Miles* by restoring "a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Miles v. Apex Marine Corp.,* 498 U.S. at 32, 111 S.Ct. at 326. In addition, the Court specifically limited *Gaudet* to its facts. The Court found that the "holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen." *Miles,* 498 U.S. at 31, 111 S.Ct. at 325; see also *Murray v. Anthony J. Bertucci Const. Co., Inc.,* 958 F.2d at 130. This Court later held that the Supreme Court's decision in *Miles* also extended the restrictions placed on *Gaudet* to the holding in *Alvez.* See *Murray v. Anthony J. Bertucci Const. Co., Inc.,* 958 F.2d at 130.

The Supreme Court's explicit limitation of *Gaudet* to its facts, as well as its implicit limitation of *Alvez* to its facts as

---

[5]446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980).

interpreted by this Court, indicates that the Supreme Court did not intend to overrule *Gaudet* or *Alvez.* As a result, we are unable to extend the uniformity rule of *Miles* to longshoremen killed or injured in territorial waters. Therefore, an inconsistency remains between deaths and injuries of longshoremen in territorial waters, where loss of consortium is available under *Gaudet* and *Alvez,* and death and injuries of longshoremen on the high seas. Until such time as the Supreme Court resolves this inconsistency with regard to longshoremen, we must apply the law as it exists today.

In applying the law to the facts in this case, it is uncontested that the injuries of which Miller complains were the result of a casualty occurring some eighty (80) miles off the Louisiana coast, outside territorial waters.[6] Because Miller's injuries occurred outside territorial waters, Miller's claim fails to satisfy one of the two equally important requirements of *Gaudet* and *Alvez* as limited by *Miles;* and it must, therefore, fail.

CONCLUSION

We therefore find that the district court was not clearly erroneous in its findings on damages or in its decision to dismiss the loss of consortium claim. We also find no abuse of discretion in the damage awards. We AFFIRM.

---

[6]Miller testified in trial that the helicopter crashed upon takeoff from Vermillion 255B, approximately eighty miles offshore.