|1LOBRANO, Judge.
This is an appeal from a judgment in favor of plaintiffs/appellants, Dorothy M. Vedros, Earline Vedros Schmidt and Earlis Vedros against defendants-appellees, American Optical Corporation and Sears, Roebuck and Company, in the amount of $75,000.00 for loss of consortium arising from the death of Percy Vedros.[1]

FACTS AND PROCEDURAL HISTORY:

From 1954 to August 1, 1979, Percy J. Vedros, Sr., a longshoreman, was employed by various stevedoring companies at numerous grain elevators along the riverfront. In 1979, Vedros was diagnosed with grain asthma, a lung disease which results from excessive grain dust inhalation. Vedros was subsequently placed on disability. He continued to reside at his home which was located a short distance from the grain elevators. Because of the air pollution from leaking grain *777 dust, Vedros was advised by his physician to move to another location.
|2On November 24, 1986, Vedros died as a result of grain asthma. His widow and major children filed suit in 1987 against ten grain elevators,[2] and American Optical and Sears alleging that Vedros contracted grain asthma during his employment which was the cause of his death. In their petition, plaintiffs alleged two causes of action: a maritime negligence action and a products liability action. Plaintiffs alleged that during the course and scope of his employment, Vedros wore a defective respirator manufactured by American Optical and distributed by Sears which contributed to his death.
Defendant, Public Grain Elevator of New Orleans, Inc., subsequently filed a motion for partial summary judgment seeking a declaration from the trial court that federal maritime law applied to plaintiffs’ claims against the grain elevators and that under federal maritime law, plaintiffs could not recover non-peeuniary damages (loss of consortium). The motion for summary judgment was granted and the ruling affirmed by this court. Vedros v. Public Grain Elevator, Inc., 620 So.2d 1376 (La.App. 4th Cir.1993).
In addition, Public Grain Elevator, Inc. also filed a motion for summary judgment contending that plaintiffs failed to state a cause of action for pecuniary damages. As a result, plaintiffs amended their petition to allege claims against all defendants for loss of support, loss of inheritance and funeral expenses. Plaintiffs also included in their amending petition, a claim for punitive damages under general maritime law against the grain elevators.
Subsequently, plaintiffs settled with the ten grain elevators.
IsTrial proceeded against American Optical and Sears. The jury awarded plaintiffs a total of $75,000.00 for loss of consortium. No other damages were awarded.
Even though the parties agreed to submit jury interrogatories, “for their own elucidation,” requesting allocation of fault among all parties,[3] the trial court ruled that pre-com-parative fault principles were applicable. As a result, the court concluded that because plaintiffs settled with the ten grain elevators prior to trial and all were found at fault, plaintiffs’ recovery against American Optical and Sears would be reduced by “feths.[4]
Plaintiffs perfect the instant appeal asserting the following assignments of error:
1) The trial judge erred by not reallocating the percentages of fault attributed by the jury to the employers and the grain elevators to the remaining blameworthy parties, American Optical Corporation and Sears, Roebuck and Company; and
2) The jury abused its discretion by only awarding $50,000.00 to the widow, Dorothy Vedros, and $12,500.00 each to the two major children, Earline V. Schmidt and Earlis Vedros for their loss of love, affection and society following the death of Percy Vedros.

ASSIGNMENT OF ERROR 1:

Plaintiffs assert the trial court erred by failing to reallocate the grain elevators’ and employers’ percentages of fault to American Optical and Sears. The thrust of their argument is that American Optical and Sears cannot be solidarily pliable with the grain elevators for non pecuniary damages because those defendants, under established maritime law, cannot be responsible for loss of consortium. In support, they cite this court’s previous ruling in Vedros, supra, as well as the federal maritime law supporting that decision.
The issue presented by this assignment of error is whether pre-comparative fault virile- *778 share principles are applicable to the judgment obtained by plaintiffs, and, if so, whether all defendants, including the settling parties, are solidary obligors so as to result in a virile-share reduction of that judgment.[5]

PRE-COMPARATIVE FAULT: THE VIRILE SHARE PRINCIPLE

Cole v. Celotex Corp., 599 So.2d 1058 (La.1992) held that Act 431 of 1979, which established comparative fault principles, must be applied prospectively. In that case, refinery workers who were injured as a result of long term exposure to asbestos, sought recovery against various manufacturers and executive officers of their employers. Their exposure to asbestos encompassed a time period beginning and ending prior to the adoption of Act 431. Suit was filed in 1987. Relying on the clear legislative expressions in Sections 4 and 7 of Act 431, the court held that the comparative fault law should not be applied to events occurring prior to its effective date, August 1, 1980.
In the instant case, decedent’s employment as a longshoreman began in 1954 and continued until 1979. Decedent died in 1986. We are satisfied that the pronouncements of Cole, supra, require application of pre-com-parative fault principles. Although after his employment, decedent lived near where he worked | Band allegedly aggravated his condition by the presence of grain dust in the area, the evidence preponderates that the “events” which caused his death occurred prior to the effective date of Act 431.
Prior to the adoption of Act 431, the law was settled that where a plaintiff settled with one co-defendant, any recovery against the remaining defendants would be reduced under the virile share principle. Harvey v. Travelers Insurance Co., 163 So.2d 915 (La.App. 3rd Cir.1964). Thus, for example, where there were five joint tortfeasors, and plaintiff settled with two, any recovery against the remaining three would be reduced by two-fifths. The Harvey court reasoned that since the settling tortfeasor is insulated from liability for contribution, and the contribution rights of the non-settling tortfeasors are rendered unenforceable, plaintiffs recovery should be reduced proportionately. The court relied on former Civil Code Article 2103, as amended in 1960, and the legislative intent behind that amendment. The court noted: “There is no question but that the legislature, ... intended to ... provide a substantive right of contribution between joint tortfeasors even though they may not have been decreed by judgment of court to be solidarily liable_” at 920.
Thus, the court in Cole, supra, approved the virile share principle of pre-comparative fault law, and approved a proportionate reduction of the plaintiffs’ recovery because of the settlements made with the manufacturer-defendants. The trial judge, relying on Cole, applied the same principle in this case. He reasoned that since the ten grain elevators were solidarily liable with American Optical and Sears, plaintiffs’ recovery should be proportionately reduced by ¾⅛. Plaintiffs argue, however, that there is no solidarity, and thus the virile share rule is not applicable. We now address that argument.

JSOLIDARY LIABILITY:

In Narcise v. Illinois Central Gulf Railroad, Co., 427 So.2d 1192 (La.1983), our Supreme Court stated:
“The fact of different defenses, different prescriptive periods, different beneficiaries in some cases, and different elements of damages does not detract from the in soli-do nature of the obligation of the two debtors. These factors may be significant in determining the existence and extent of the liability of each debtor toward the plaintiff. However, once the extent of each debtor’s liability has been determined there is an in solido obligation as to their common liability to the injured party.” at p. 1195.
This rule of solidarity was reiterated and strengthened in the recent case of Williams v. Sewerage and Water Board of New Orleans, 611 So.2d 1383 (La.1993). The issue in Williams was whether an employer, sued only for worker’s compensation, is solidarily *779 bound with a third party tort-feasor for the purpose of interrupting prescription as to that third party tort-feasor. The court held that “[b]ecause some elements of the damages recoverable from the employer and the tort-feasor are coextensive, ... they are solidarity bound to that extent” and thus suit against the employer interrupted prescription as to the third-party tort-feasor. Retying on Narcise, supra, the court reasoned:
“Narcise pointed out that differing sources of liability ‘[do] not preclude an in solido obligation to the extent that each is liable for certain damages sustained by plaintiff, (citations omitted) Narcise echoed Hoefly [Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982) ] when it stated ‘[i]t is the co-extensiveness of the obligations for the same debt, and not the source of liability, that determines the solidarity of the obligation.’ ” Id. at p. 1388.
We find significant the fact that in both Williams and Narcise the court concluded that when two or more defendants have coextensive liability for j 7a common element of damages, even though the basis of their liability is different, they are liable in solido.
Plaintiffs argue, however, that because this court previously held that the grain elevators were not liable for non-pecuniary damages, they cannot be liable in solido with American Optical and Sears. They point out that, based on our previous holding, American Optical and Sears could not seek contribution and/or indemnity from the grain elevators, and thus there could be no liability in solido for loss of consortium damages. Without a right of contribution from the grain elevators, plaintiffs assert there is no underlying reason to reduce their judgment according to virile share principles.
Upon initial consideration, plaintiffs’ arguments make sense. The whole idea espoused in Harvey for virile share reduction was the fact that, by settling with one tortfeasor, the plaintiff effectively barred the remaining tortfeasors of a right to contribution. It would seem logical to conclude that if there is no right of contribution in the first place, settling with a co-tortfeasor makes no difference. However, upon closer examination, plaintiffs’ arguments are basically the same as made by the third-party tort-feasor in Williams, supra, which were rejected by the Supreme Court.
The Williams’ court reasoned that “[i]n a worker’s compensation claim where the employee does not suffer a fatal injury, some elements of compensation damages are the same as those which may be recovered as tort damages ...and thus both are obligated to the same thing. The court held that “[s]olidarity looks only to the exoneration of the debt as to the creditor, and the fact that the obligors may not have corresponding rights of contribution or indemnity as between each other does not destroy solidarity.” at 1388. (emphasis added)
| sin the instant case there are common or “coextensive” obligations amongst all the defendants, although the source of those obligations may be different. In particular, most, if not all of the pecuniary claims asserted by plaintiffs against all of the defendants consist of common damage elements sufficient to establish solidarity. The fact that plaintiffs did not actually recover any pecuniary damages from American Optical or Sears is of no consequence. And, just as the third party tortfeasor’s inability in Williams to obtain contribution from plaintiffs employer did not destroy solidarity, American Optical and Sears’ inability to obtain contribution in this case does not affect their status as solidary obligors with the grain elevators.[6]
As we previously noted, the “virile share” rule of law was premised on former Civil Code Article 2103, as amended in I960.[7] Sol *780 idarity forms the basis of that rule. Although the reasoning of Harvey is premised on principles of contribution, we cannot ignore more recent jurisprudence defining soli-dary obligations for other purposes. To do so would, in essence, require us to conclude that parties may be solidary obligors for one purpose, but not another. In light of Supreme Court holdings such as Williams, Narcise, and Hoefly, supra, we will not | ¡¡make that conclusion. If defendants are solidary obligors for prescription purposes, they are solidary obligors for virile share purposes.
As a consequence of the solidarity among the defendants, and the application of pre-comparative fault principles, we hold that the trial court judgment is correct. Plaintiffs settled with ten of the twelve solidary obli-gors, thus their recovery against the remaining two is reduced by !%2ths.

ASSIGNMENT OF ERROR 2:

Plaintiffs assert the jury awards for loss of consortium are so low that they “shock the conscience.” We disagree.
Percy Vedros was 67 years old at the time of his death. His widow, Dorothy Vedros, testified that they had been married for over forty years. She described their relationship as close and loving. Mrs. Vedros was a full time housewife and mother. She and her husband spent all of their leisure time together raising their three children and caring for each other. Mrs. Vedros stated that her husband was a good husband who would do anything for her. She testified that she misses him very much and speaks of him often with her children.
Just like their mother, Earline Vedros Schmidt and Earlis Vedros had a close and loving relationship with their father. At the time of his death, they were adults with children of their own.
Earline testified that she was very close to her father and depended on him for advice and friendship. She lived with her parents until she was 37 and her son was 18 years old. She testified that she spoke to her father everyday and visited him several times per week. She would cut his hair and do whatever else he asked. The family shared weekends and holidays together.
[ ipEarlis described his father as “his best friend.” He spent every weekend with him as well as all holidays. He telephoned his father every night. Before his father’s health deteriorated, they would often go to wrestling matches or take a drive through the park as well as share other outings together. He stated he misses him very much and speaks of him often.
From plaintiffs’ testimony it is clear that they were a loving family and like thousands of other spouses and children, they experienced pain, grief and a deep sense of loss upon the death of their loved one. There was no evidence, however, that plaintiffs experienced any extreme psychological or emotional damage or that they were unusually dependent, either for their emotional or physical well being, upon the decedent.
In Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993), our Supreme Court succinctly stated the law of appellate review and assessment of damage awards as follows:
“Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). And, ‘[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient.’ Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong on its conclusions. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Before an appellate court can disturb the quantum of an award, the record must clearly reveal *781 that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See Reck v. Stevens, supra; |11Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App. 2d Cir.1985). at p. 1340.
We conclude that, although the awards may be less than what this court would have awarded, they are not so low as to constitute an abuse of discretion by the jury. Reviewing the evidence in the light which most favorably supports the judgment, we cannot say that the awards are below that which a reasonable fact finder could assess under the particular facts and circumstances of this case. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. Plaintiffs arc the surviving widow and major children of decedent.

,The ten grain elevators were: Public Grain Elevator of New Orleans, Inc., St. Charles Grain Elevator, Dockside Elevators, Bunge Corporation, Cargill, Inc., Continental Grain Company, Continental Reserve Elevator Corporation, Farmer’s Co-op, Mississippi River Grain Elevator, and Peany Company.

. American Optical and Scars were each found 3.54% at fault. The ten grain elevators who settled with plaintiffs were each found 4.04% at fault for a total of 40.4%. The thirteen employers were each found 4.04% for a total of 52.52%.

. The court excluded any consideration of employer fault.

. These issues are unique in the sense that the pre-comparative fault virile share rule will probably never be used except in cases such as this involving injury as a result of long term exposure to hazardous materials which occurred prior to the adoption of comparative fault principles.

. Sears and American Optical advance the argument that the recent pronouncements in Nicole v. Petroleum Helicopters, Inc., 17 F.3d 119 (5th Cir.1994) suggest that our previous holding in this case was error. They urge that non-pecuniary damages are still available to the survivors of longshoreman killed in territorial waters. Although Nicole is inconsistent with our reasoning in Vedros, supra, it is not necessary to address that issue. As Williams and Narcise hold, all defendants need not be obliged for all of the elements of the damages sought. As long as there is some coextensive obligation, solidarity will not be defeated. Furthermore, irrespective of Nicole or any other subsequent decision our ruling in Vedros is the law of this case.

. That article provided, in part:
*780 "When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.”