Jose Ismael FERNANDEZ–REYES, on his own behalf and in representation of the minors Maria Eugenia Fernandez–Estrada, Julio Ismael Fernandez–Rivera, Melissa Fernandez–Rivera and Yoismel Fernandez–Rivera; Nilka Estrada; Carmen Gloria Reyes–De–Fernandez and Ismael Fernandez–Pacheco, Plaintiffs,

v.

HILL CONSTRUCTION CORP. d/b/a Hill Aviation and American Eagle Group Inc., Defendants.

No. Civil 95–1426CCC.

United States District Court, D. Puerto Rico.

Feb. 27, 1996.

José A. Figueroa–Morales, San Juan, PR, for Plaintiffs.

Jaime F. Agrait–Lladó, San Juan, PR, for Defendants.

## OPINION AND ORDER

CEREZO, Chief Judge.

This is an action for damages arising from an incident in which a helicopter went down in the Bay of Mayaguez and began to sink with its passengers and pilot. Plaintiff Fernandez–Reyes, a professional photographer, had secured a space on the helicopter to take photographs of a regatta being held in the bay. The suit was filed in federal court pursuant to our admiralty jurisdiction under the theory that, because the plaintiff was taking photos of a regatta for a periodical, the incident must be considered as a "maritime tort committed during the course of a traditional maritime activity and upon the navigable waters of the United States." [1]

The action is before us on defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket entry 4). Plaintiffs opposed the motion (docket entry 6), arguing that the wrong bears a significant relationship to traditional maritime activity. Having reviewed the record and applicable law, the Court finds that there are no facts in dispute, with regard to the jurisdictional issue, and, therefore, the issue is a legal one.

If the fact that plaintiff was photographing a regatta at the time the helicopter crashed the into the bay is put aside for the moment, plaintiffs' own allegations are clearly those of an aviation tort:

22. While flying the helicopter ... the pilot ... violated various provisions of the Regulations enacted by the Federal Aviation Administration, particularly when he exceeded the maximum speed limit for a helicopter with the doors removed, permitted more weight than the maximum allowed in the front cabin of such a helicopter, and flew at an altitude below the minimum altitude allowed....

23. In all, the crash ... was proximately caused by the fault and/or negligence of

1. Plaintiff's complaint, p. 1, ¶ 1.

pilot William Duncan, who failed to fly it in a prudent and reasonable manner an[d] in accordance with the Regulations....

(Complaint, at p. 6)

Both parties agree that the leading case, *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), governs the jurisdictional issue here by establishing the controlling principles:

> ... we conclude that the mere fact that the alleged wrong "occurs" or "is located" on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case into a "maritime tort". It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity.
>
> We hold that unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty in the absence of legislation to the contrary.

The entire reasoning of *Executive Jet* in support of the denial of federal admiralty jurisdiction is based upon the distinction between airborne and waterborne vessels. The Supreme Court observed that "[t]he law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world...." *Executive Jet*, supra, at 269, 93 S.Ct. at 505. It concluded that the rules and concepts governing sea vessels are "wholly alien to air commerce, whose vehicles operate in a totally different element" and that "[t]he matters with which admiralty is concerned have no conceivable bearing on the operation of aircraft, whether over land or water." *Id.*

The court hypothesized that an aircraft engaged in a transatlantic flight could possibly bear "a significant relationship to traditional maritime activity because it would be performing a function traditionally performed by waterborne vessels." *Id.* at 271, 93 S.Ct. at 506.

*Ledoux v. Petroleum*, 609 F.2d 824 (5th Cir.1980), accommodates its holding to the principles set out in *Executive Jet*. There the court upheld admiralty jurisdiction by finding that "[t]he crash of the deceased's helicopter, while it was being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures, bears the type of significant relationship to traditional maritime activity, which is necessary to invoke admiralty jurisdiction." (Emphasis ours.) *Ledoux*, supra at 824.

Therefore, the issue before us is whether or not transporting photographers by helicopter to take press photographs and videos of a regatta bears a significant relationship to traditional maritime activity.

Plaintiff attempts to make the necessary connection with the following argument:

> [t]here can be no more traditional maritime activity than participating in a regatta of vessels. The function of the helicopter was to transport photographers to take still and video pictures of this traditional maritime activity.... If helicopters did not exist, these photographs would have been taken from a spectator boat. The helicopter just provides a different perspective and allows a higher observation point.

(Plaintiffs' opposition, p. 4)

While we agree with the first sentence, the remainder does not follow. The inference that "transporting photographers" constitutes "participating in the regatta—"which necessarily follows from plaintiff's jurisdictional theory—is meritless. The argument assumes that photographs and videos are an integral part of a regatta, which we do not find to be the case. We would be hard pressed to find that, in the era previous to modern photography, the transporting of artists to the site of a regatta, so that it could be memorialized in a painting or drawing bears a significant relationship to the event. What we can say is only that photographing a regatta bears a significant relationship to modern day sports journalism.

The cases cited by the plaintiff are clearly distinguishable. In all of them: *Rosen v. United Technologies Corp.*, 484 F.2d 490 (S.D.N.Y., 1980); *Offshore Logistics v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119 (9th Cir.1994),

and *Comind, Companhia de Seguros v. Sickorsky Aircraft Division of United Technologies Corporation,* 116 F.R.D. 397 (D.Conn. 1987), it is the offshore location that makes the drilling itself a maritime activity. Transportation of the workers and supplies, without which it does not happen, bears a significant relationship to that activity.

Photographs, films and photographers are not essential to a regatta which needs no publicity to take place. The location from which the pictures are taken, whether on land, water or air, bears no significant relationship to the maritime activity itself.

For the above stated reasons, the Motion to Dismiss is GRANTED. Judgment will enter accordingly.

SO ORDERED.