STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-1067


JAMES LEE BANCROFT, ET UX.

VERSUS

MITCHELL OFFSHORE MARINE, LLC, ET AL.


**********


APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-19756
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE


**********


**BILLY HOWARD EZELL**
**JUDGE**


**********


Court composed of Sylvia R. Cooks, Oswald A. Decuir, Jimmie C. Peters, Marc T. Amy and Billy Howard Ezell, Judges.

                                        **AFFIRMED AS AMENDED.**


Cooks, J., dissents and assigns written reasons.
Amy, J., concurs in the results and assigns reasons.


**Susan A. Daigle**
**Brenda L. Mistrot**
**Daigle, Rayburn, LLC**
**303 West Vermilion Street, Suite 210**
**Lafayette, LA 70501**
**(337) 234-7000**
**Counsel for Defendants/Appellees:**
**Mitchell Offshore Marine, LLC**

Jeff Isel
Jennifer Jones
Jones & Alexander, LLC
P. O. Drawer 1550
Cameron, LA 70631
(337) 775-5714
Counsel for Plaintiffs/Appellants:
James Lee Bancroft
Glenda Bancroft

Brent Barber Boxill
8714 Jefferson Highway, Suite B
Baton Rouge, LA 70809
(225) 923-1055
Counsel for Plaintiffs/Appellants:
James Lee Bancroft
Glenda Bancroft

Kenneth Henry Hooks, III
H. Price Mounger
Dodson, Hooks & Frederick
17405 Perkins Road
Baton Rouge, LA 70810
(225) 756-0222
Counsel for Plaintiffs/Appellants:
James Lee Bancroft
Glenda Bancroft

**EZELL, JUDGE**.

James Bancroft and Mitchell Offshore Marine both appeal a decision of the trial court in this Jones Act case. For the following reasons, we hereby affirm the decision of the trial court as amended.

The underlying facts of this case are not in dispute. Mr. Bancroft was employed as a seaman on the M/V CAPTAIN NICK when that ship, owned by Mitchell and captained by Jeff Isel, collided with the PAN AM CARIBE, a 440 foot ship. As a result of that accident, Mr. Bancroft was thrown violently into a navigation table, breaking his ribs and puncturing his lung. The trial court found that Mitchell was negligent, that the vessel was unseaworthy, and ruled that Mitchell owed Mr. Bancroft $65,000 in general damages for the rib and lung injuries, as well as $8,250 for past wage loss. The trial court, however, found claims by Mr. Bancroft that the accident re-aggravated a prior back injury to be unsupported by the evidence and refused to award him any damages in connection with those claims. From the trial court's decision, both parties appeal. Bancroft asserts four assignments of error on appeal. He claims that the trial court erred in applying an incorrect burden of proof as to the cause of his back injury; that the trial court erred in finding his spine injuries and subsequent spinal fusion were not caused by the accident; that the trial court erred in awarding unreasonably low damages for his injuries; and that the trial court erred in failing to award punitive damages against Mitchell for its alleged refusal to pay maintenance and cure. Mitchell answers the appeal, claiming that the trial court's award of damages for the injuries sustained was too high.

Bancroft first claims that the trial court erred in applying an incorrect burden of proof to the causal element of this case and that, therefore, this court should review the record before us de novo. However, before determining whether or not the trial

court applied the correct burden of proof in this matter, we first must discuss what the applicable burden of proof as to causation is. The statutory scheme and Supreme Court precedent interpreting the Jones Act and its standard of causation were discussed in *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5 Cir. 1997) (alteration in first paragraph in original) as follows:

> Under the Jones Act, seamen are afforded rights parallel to those of railway employees under the Federal Employers' Liability Act ("FELA"). 46 U.S.C. § 688. Section 51 of the FELA provides, in pertinent part, that "[e]very common carrier by railroad . . . shall be liable in damages . . . for such injury or death *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51 (emphasis added). A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury. In their earlier articulations of § 51 liability, courts had replaced the phrase "in whole or in part" with the adjective "slightest." In *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957), the Supreme Court used the term "slightest" to describe the reduced standard of causation between the employer's negligence and the employee's injury in FELA § 51 cases. In *Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957), the Court applied the same standard to a Jones Act case, writing, " 'Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' " (quoting *Rogers*, 352 U.S. at 506, 77 S.Ct. at 448).
>
> . . .[T]he phrase "in whole or in part" as set forth in the statute, or, as it has come to be known, "slightest," modifies only the causation prong of the inquiry.
>
> . . . .
>
> Guided by the Supreme Court, we . . . employed the phrase "slight negligence" as a shorthand expression for the standard by which we measure, in our review of a jury verdict, the sufficiency of evidence establishing a causal link between an employer's negligence and a seaman's injury.

Mitchell argues that the "slight" or "featherweight" standard of causation requires proof of that slight standard by a preponderance of the evidence. For this proposition, Mitchell relies on *Monroe v. Cooper/T. Smith Stevedoring Co., Inc.*, 06-

2

933(M.D. La. 2009), ___F.Supp.2d ___. However, the court in *Monroe* ignores the above language from *Gautreaux* and instead relies upon a Fifth Circuit Pattern Jury Instruction form for its finding that "a plaintiff in a Jones Act negligence case bears the burden of proving a featherweight of causation by a preponderance of the evidence." *Id.* at ___. We believe that the *Monroe* court should have found that the jury instruction was in need of change, rather than the established law. Because the court in *Monroe* went against years of established precedent and incorrectly expanded the evidentiary burden of proof as to a causal connection between a Jones Act plaintiff's injury and his employer's negligence from slight evidence to preponderance of the evidence, we decline to follow that case.

Having determined that the correct burden of proof to be applied in this matter is that Bancroft need only prove any injury he may have sustained was causally linked to Mitchell's negligence by slight evidence, we may now determine if the trial court below correctly applied this burden of proof. The trial court stated the following in its reasons for judgment:

> In maritime law, it has been stated: ". . . under the Jones Act and the general maritime law, when the defendants' act aggravates or accelerates a pre-existing condition and renders a plaintiff unable to continue his work or awakens a dormant condition that causes a plaintiff to experience pain when he did not suffer from pain or disability prior to the aggravation, defendant can be liable in full for the disability caused." *Stevens v. Omega Protein, Inc.*, 2005 U.S.Dist. LEXIS 537 (E.D. La. Jan. 11, 2005). Nevertheless, the burden is still upon the plaintiff to prove a causal connection between the damages claimed and the accident even if the damages are only the aggravation of a pre-existing injury and even if a seamen's burden to prove causation is "slight."

Our review of the record reveals no indication that the trial court applied an incorrect burden of proof, despite its use of the phrase "preponderance of the evidence" in its written reasons. While the trial court does allude to a preponderance of the evidence in its discussion of the facts pertaining to Mr. Bancroft's back injury,

it is clear that it understood and applied the correct, slight burden of proof in this case as demonstrated by the above-quoted language, any unfortunate and inappropriate language notwithstanding. Further, it is important to note that a "district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Bellard v. Am. Cent. Ins. Co.*, 07-1335, 07-1399, p. 25 (La.4/18/08), 980 So.2d 654, 671 (citations omitted). Accordingly, we need not perform a de novo review of this matter, but shall examine the record before us under the manifest error standard of review. *See Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La. 7/2/96), 676 So.2d 89.

Mr. Bancroft next contends that the trial court erred in failing to find that the "Plaintiff's spine injuries and resulting surgical fusion [were] caused by the collision." Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La. 2/28/94), 633 So.2d 129; *Stobart v. State through DOTD*, 617 So.2d 880 (La.1993). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart, supra*. An appellate court must not re-weigh the evidence or substitute its own findings of fact simply because it may have decided the case differently. *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, 93-3110, 93-3112, (La. 7/5/94), 639 So.2d 216.

The trial court set forth incredibly detailed and thorough reasons for judgment that accurately describe Mr. Bancroft's long medical history of back problems as follows:

4

In order to determine whether plaintiff's current back problems relate sufficiently in causation on the collision of January 5, 2007, a review of his entire medical history is in order.

Plaintiff's back problems were first documented when he saw Dr. Joe Paul Alberty at St. Edwards Mercy Hospital on February 9, 1997. He recounted at that time that he had injured his back moving an "I" beam. Dr. Alberty made a diagnosis of acute herniated nucleus pulposus in his lumbar spine at Level L 4-5 and L5-S1. A CT scan confirmed injury to the disc at L 4-5. Dr. Alberty performed an epidural steroid injection in order to give relief and on February 18th plaintiff reported that he was much improved. Dr. Alberty allowed plaintiff to return to work but with a ten pound lifting restriction and recommended that he use a lumbar support.

On April 18th of that year, plaintiff reappeared before Dr. Alberty complaining of pain radiating into his right leg and sometimes into both legs. On April 25th a MRI was performed which confirmed that there was asymmetry in the disc at L 4-5. In discerning the injured disc as the source of the pain, Dr. Alberty recommended surgery and decompression. The doctor testified that he was not of the school who thought that fusion was a good solution for this kind of problem. When attempts at decompression were not recommended or unsuccessful, he would refer the patient to another surgeon.

On May 1 Dr. Alberty approved the plaintiff for light duty but reportedly plaintiff did not yet feel well enough to return to work. He made subsequent visits to the doctor on June 2nd and June 12th and received prescriptions for pain medication. He again saw Dr. Alberty on July 10th and July 31st. Besides the usual complaints of pain, he also identified numbness in his legs. At an October 27th visit to the doctor for the same general symptoms, his condition had worsened to the point that plaintiff was using crutches to walk. There was improvement afterwards and on November 24th Dr. Alberty reported that plaintiff was doing better, and the doctor raised the weight lift restriction up to 50 pounds.

A year went by and on October 5, 1998, plaintiff appeared before Dr. Alberty with a history that he had reinjured his back while working on a golf course. In his notes, Dr. Alberty wrote "acute lumbar disc" and suggested a lumbar epidural steroid injection which he referred to by its initials, "LESI." The injection was performed and plaintiff received some relief. On October 21, 1998, Dr. Alberty had three MRI's performed on plaintiff, and it showed no change in the disc condition. On October 27th plaintiff was again examined and it appears that he had less pain and more flexibility. Plaintiff was continued on pain medication and in November of 1998 the pain medicine was switched with apparent success.

5

However, in January of 1999, he experienced the same recurrent symptoms. He reported again to Dr. Alberty in April of 1999 and again in May of 1999 at which time Dr. Alberty reviewed an MRI and a CT scan which had been done in the interim. Dr. Alberty was of the opinion that a repetition of certain work by the plaintiff would "bring back the original symptoms." The plaintiff was seen by Dr. Alberty on June 1st for his very last visit. At that time, Dr. Alberty referred to a radiographic study done by a Dr. Standefer in February of 1999 (relating to a workmen compensation claim by the plaintiff) which conclusion read: "the salient findings consist of rather marked degenerative disc disease at L 4-5 with attendant focal disc protrusion with lateralization centrally and to the left."

In 2001 he was admitted to St. Edwards Mercy Hospital. The admission report reflects herniated disc. Subsequently that year, plaintiff was involved in an automobile accident in which he injured his back and reported a history of chronic back pain. In 2004 while being treated at the Teche Regional Medical Center for a reaction to marijuana, he related symptoms of his "slipped disc" and thigh pain. Later in June of that same year, he reported to Teche Regional Medical Center with complaints of chronic back pain and pain radiating down both of his legs. He subsequently applied to the Social Security Administration for disability. That allegation was based on several medical problems including his lower back. In December 2004, he appeared at the Leonard Chaubert Medical Center complaining of back pain and received treatment.

In December 2005, the plaintiff was involved in another automobile accident which brought on complaints of neck, shoulder and significantly, back pain. At the Teche Regional Medical Center, he reported a history of disc at L-l, L-2, L-4 and L-5 and also a numbness in his legs. His back pain was described as persistent and was rated 8/10. He was prescribed pain medication. In connection with the back, plaintiff only reported that he had experienced back problems earlier but he thought that condition had resolved.

Following the collision of January 5, 2007, the basis of this lawsuit, an MRI of the lumbar spine was ordered and reviewed by Dr. Turnipseed, the pain management specialist, on March 27th. Dr. Turnipseed testified that it revealed an annular tear of the disc at L 4-5 with a herniation which was compressing the L 5 nerve root. He prescribed more pain medication. On May 18, 2007, he administered a LESI. On May 29, 2007, the plaintiff reported that the injection had given him little relief, and Dr. Turnipseed scheduled a second one which was not performed.

Meanwhile, Dr. Jorge Isaza, an orthopedic surgeon, had examined the plaintiff and recommended a discogram for diagnos[t]ic purposes. On September 12th plaintiff returned to discuss the procedures for his discogram and it was performed on October 3, 2007. The results of that

test confirmed that the source of the pain was from the L 4-5 level. Dr. Isaza had been called in for consultation by Dr. Turnipseed who felt that the pain management methods were inadequate for plaintiff's condition.

At plaintiff's initial interview with Dr. Isaza, the descriptions of his discomfort were virtually identical to the symptoms he had been experiencing since his treatment by Dr. Alberty. Plaintiff was said to be suffering from "low back pain, right leg pain." In his history to Dr. Isaza he said that the pains resulting from prior injuries to his back had never resolved. From Dr. Isaza's notes, plaintiff was referring to the "I" beam accident which brought him to Dr. Alberty, and the later golf cart incident. According to Dr. Isaza's notes, the plaintiff did not mention the two intervening automobile accidents. On March 5, 2007, Dr. Isaza reviewed x-rays, and his examination revealed degenerative changes and a disc herniation at L 4-5 with an annular tear at the same level. The doctor also met with plaintiff on September 17, 2007, to review the MRI of his thoracic spine. That test disclosed no fractures or disc herniation at those levels.

Plaintiff next saw Dr. Isaza on October 22, 2007, with the same general complaints, and the doctor recommended surgical fusion. On November 8, 2007, surgery was performed of an interior lumbar innerbody fusion at L 4-5 with the application of a BMP cage to maintain the inter-vertebral-spacing. Plaintiff had one post-op examination with Dr. Isaza, end the doctor pronounced the results as "good." He predicted that it would take six months until maximum recovery.

It was Dr. Isaza's opinion that plaintiff had received no injury to the thoracic spine. It was further his opinion that whether the lumbar spine problems were aggravated by the accident really depended upon the subjective history given by the patient. Significantly, he identified no physical evidence to suggest that the condition of the lumbar spine was any different after the accident than it was before.

. . . .

The history of plaintiff's medical problems disclosing recurrent bouts with the same lower back pain even negates the proposition that a latent problem was made symptomatic by his accident. The record is that he suffered persistent back pain for more than a decade before the accident, the changes only being as to the degree or level of pain. Immediately following the collision, plaintiff's complaints were to his chest and ribs. The other crew members recall that he went up and down the stairs of the boat and had the presence of mind to begin taking photographs, evidently in anticipation of litigation.

Dr. Isaza was of the opinion that the surgery he performed was for the same injury that had been diagnosed before the accident. This is supported by the opinion of Dr. Larry J. Messina, who performed an

7

independent medical examination in November of 2007. It was his opinion that the recent MRI's upon the plaintiff were consistent with the MRI's before the accident and that the neurological changes to plaintiff's back were the same old problems.

Whatever disability the plaintiff suffers today from his disc degeneration or from the surgery by Dr. Isaza was not caused by his accident aboard the CAPTAIN NICK. In truth, the measure of his disability is difficult to determine because he had been declared disabled before the accident, even by his own assertions. In addition to his admission to Karen Keller, vocational rehabilitation expert, that he had been disabled at times since 1997, he also claimed total disability in a separate law suit from 1987. Furthermore, there was evidence to show that subsequent to the collision of January 5, 2007, he continues to engage in physical labor which the court is convinced is no different from that of which he was capable before the accident.

We agree with the trial court's exhaustive reasons for judgment that Mr. Bancroft's back injury and surgery were not caused by this accident. The record clearly shows that Mr. Bancroft's L4-5 injury existed for years before the current accident, and his own surgeon felt that the surgery performed was for the pre-existing disc protrusion. Dr. Messina further felt the injury was older due to signs of muscle atrophy that would not be associated with a more recent injury. Moreover, the trial court obviously felt that Mr. Bancroft's credibility was questionable, as he withheld information concerning his constant back problems from Mitchell while seeking employment and consistently failed to give information about intervening accidents and back problems to his examining physicians, none of whom seem to have gotten a completely accurate medical history from Mr. Bancroft. While Mr. Bancroft is entitled to the easier, slight standard of causation, the record shows that the evidence overwhelmingly indicates that he did not prove that his disc injury was caused by this accident, nor that his spinal surgery was necessitated by the accident. We can find no manifest error in that determination of the trial court.

Nevertheless, even though Mr. Bancroft's L4-5 herniation and resultant surgery were not caused or aggravated by the accident, the trial court did err in failing to find

8

any back pain whatsoever was caused by the accident. In other words, while there was no physical aggravation or degradation of the underlying injury, it is clear that Mr. Bancroft suffered from some back pain as a result of this accident, as evidenced by the medical records of the Medical Center of Southeast Texas, the hospital Mr. Bancroft was taken to after the incident. To find that a man who suffers from the spinal problems Mr. Bancroft has endured for over a decade experienced no back pain at all from an accident as violent as this is clear error, especially in light of the medical records noted above. To be clear, this finding does not affect our determination that the disc protrusion that necessitated surgery predated the accident in any way. This finding does, however, affect our determination as to the reasonableness of the award of general damages, which we will now address.

Both Mitchell and Mr. Bancroft appeal the trial court's award of general damages.

> Damage awards are findings of fact which can be disturbed on review only if the fact finder abused its discretion in making the awards. *Guillory v. Lee*, 09-75 (La.6/26/09), 16 So.3d 1104. The trial court was vested with "great . . . even vast" discretion in awarding damages to Mr. [Bancroft]. *Id*. at 1117. Therefore, its awards are entitled to great weight and should only rarely be reversed. *Id*. In determining whether an abuse of discretion has been shown, the relevant evidence must be viewed in the light which offers the most support to the trial court's judgment, and if a reasonable factual basis exists for the trial court's damage awards, we cannot reverse the awards. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

*Jason v. La. Mun. Risk Mgmt. Agency,* 09-699, p.7 (La.App. 3 Cir. 12/16/09), ___So.3d___,___. We find that the trial court abused its discretion in awarding damages to Mr. Bancroft for injuries to his ribs and chest only. The medical records show that he suffered some back pain as a result of the accident, even if the underlying source of the pain was not exacerbated by the accident. Accordingly, we

9

hereby award Mr. Bancroft an additional $25,000 in general damages for pain and suffering related to any back pain he sustained as a result of this crash. *See Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119 (5 Cir.1994).

Finally, as we find that the trial court correctly ruled that Mr. Bancroft's spinal injury and surgery were not causally related to the accident, we need not address his assertion that Mitchell acted arbitrarily and capriciously in refusing to pay maintenance and cure for that condition.

For the above reasons, we hereby affirm the decision of the trial court that Mr. Bancroft's spinal injury and surgery were not causally related to the accident predicating this suit. We amend the award of general damages to Mr. Bancroft to increase the award from $65,000 to $90,000. Costs of this appeal are to be split between the parties.

**AFFIRMED AS AMENDED.**

JAMES LEE BANCROFT, ET UX.


VERSUS


MITCHELL OFFSHORE MARINE, LLC, ET AL.


**COOKS, J., dissenting.**

I respectfully dissent from the majority opinion finding Plaintiff failed to meet his burden of proving his on-going back complaints were causally linked to Defendant's negligence. In *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1244 (5th Cir. 1997), *cert. denied*, 513 U.S. 819, 115 S.Ct. 78 (1994), the court concluded a plaintiff "is entitled to recover under the Jones Act if he adduced probative evidence that [the defendant's] negligence played any part - however small - in the development of his condition." The majority acknowledges Plaintiff is entitled to rely on this easier, slight or featherweight standard of proof, but concludes he was unable to meet this burden at trial. I disagree.

The testimony and medical evidence in this case indicated, subsequent to the accident, Plaintiff suffered severe back problems, culminating with the performance of an anterior lumbar fusion at the L4-5 level. The hospital records reflect Plaintiff complained of severe back pain at the Emergency Room visit following the collision. The ensuing medical records establish continual complaints regarding his back. Plaintiff's back treatment could not begin until his lung and rib injuries were stabilized. Conservative treatment was unsuccessful, leading to the performance of the lumbar fusion.

The medical records also reflected that Plaintiff had past problems regarding his back. The trial court concluded the "history of Plaintiff's medical problems disclosing recurrent bouts with the same lower back pain even negates the proposition that a latent problem was made symptomatic by his accident." I disagree. Although the record makes it clear Plaintiff suffered from prior back problems, it seems obvious the accident caused "a latent problem [to become] symptomatic." The captain of the boat specifically testified that Plaintiff had no problem performing heavy manual labor prior to the accident, and was one of his best and strongest workers. Thus, I find it hard to accept that the undisputedly severe collision did not substantially exacerbate Plaintiff's back problems.

Considering the record, Plaintiff, in my view, easily met the burden of showing slight or featherweight evidence of a causal link between the subsequent back problems he continues to experience and the accident in question. I cannot simply disregard the trial court's use of the term "preponderance of the evidence" as "unfortunate and inappropriate language" as the majority elects to do. In contrast, I believe this language evidences that the trial court erroneously held Plaintiff to a higher burden of proof rather than the "featherweight" Jones Act burden the courts have stated is required in this case. The majority compounds this error on appeal by acknowledging Plaintiff suffered back pain as a consequence of the accident, warranting an increase in the general damage award, but refusing to allow his recovery for the underlying injury that precipitated the pain.

NUMBER 09-1067

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JAMES LEE BANCROFT, ET UX

VERSUS

MITCHELL OFFSHORE MARINE, LLC, ET AL

AMY, J., concurring in the result.

I respectfully concur in the result as I find no error in the trial court's discussion of the burden of proof. To the extent that alternative arguments are made about whether the featherweight standard refers to causation or to burden of proof, I think *Monroe v. Cooper/T.Smith Stevedoring Co., Inc.*, _ F.Supp. 2d _ (M.D. La. 2009), resolves the question correctly and explains that "featherweight" and "preponderance of the evidence" are not mutually exclusive. Instead the terms reference "different facets of the burden of proof borne by a plaintiff with regard to the causation element of a Jones Act negligence claim." *Id.* at _.

While "'featherweight' refers to the reduced standard of causation applicable to a Jones Act claim - a standard that requires the plaintiff to demonstrate only that the employer's negligence played 'any part, no matter how small, in bringing about the injury, . . . *'preponderance of the evidence' refers to the evidentiary burden necessary to demonstrate a featherweight of causation*." *Id.* at _. (Emphasis added.) In my opinion, the trial court's description of the burden of proof was consistent with the applicable law.

I do, however, join the majority in its determination that the general damages should be increased due to non-disc related back injuries.

For these reasons, I concur in the result.