548 So.2d 1260 (1989)
Dwayne Paul JONES, Sr., et al.
v.
Howard PAYTON, et al.
Nos. 88-CA-0687, 88-CA-0688.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1989.
On Rehearing August 24, 1989.
Writ Denied October 6, 1989.
*1261 Nat G. Kiefer, Jr., Joseph V. Di Rosa, Jr., New Orleans, for plaintiffs-appellees.
Edward P. Lobman, David I. Bordelon, Lobman, Carnahan & Batt, Metairie, Robert N. Ryan, P. Bruin Hays, II, Bienvenu, Foster, Ryan & O'Bannon, Timothy G. Schafer, Schafer & Schafer, New Orleans, for defendants-appellants.
Before GARRISON, BARRY and WILLIAMS, JJ.
GARRISON, Judge.
On December 12, 1984, at approximately 9:30 a.m., a truck carrying two steel cargo containers was being driven by defendant Howard Payton on St. Claude Avenue in New Orleans. As the truck sped through the intersection of Franklin Avenue and St. Claude Avenue, it hit a bump causing one of the containers weighing approximately three tons to slide off of the vehicle and into the street hitting Tianda Thomas and Frank Findlay. Thomas was pronounced dead at the scene and Findlay died three weeks later. Thomas' three year old son, Dwayne Paul Jones, Jr., was pushed out of the path of the container by his mother and received relatively minor injuries.
Dwayne Paul Jones, Sr., tutor of Dwayne Paul Jones, Jr., and Jo Ann Findlay, widow and executrix of the succession of Frank Findlay, brought survival and wrongful death actions against Payton; his employer, Waterfront Haulers, Inc.; and their liability insurers, the Security Insurance Group and United States Fire Insurance Company. Other insurance companies were originally named as defendants but were dismissed from this case pursuant to plaintiffs' motion. These two cases were consolidated for trial.
After trial on the merits, the trial judge rendered judgment on July 21, 1987 as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Dwayne Paul Jones, Sr. on behalf of his minor child, Dwayne Paul Jones, Jr. and against defendants, Howard Payton, Waterfront Haulers, Inc. in sum of three hundred thirty one thousand two hundred seventy-four dollars ($331,274.00) together with judicial interest from the date of judicial demand until paid and all costs of these proceedings.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Jo Ann Findlay, Individually and as Executrix of the Succession of Frank S. Findlay and against defendants, Howard Payton, and Waterfront Haulers, Inc., in solido, in sum of two hundred seventy nine thousand four hundred dollars ($279,400.00) together with judicial interest from the date of judicial demand until paid and all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that policy of insurance issued by Security ReInsurance Company to Waterfront Haulers, Inc. and the policy of insurance issued by United States Fire Insurance Company to Waterfront Haulers, Inc. are both excess to the policy of insurance issued by Security Insurance Company of Hartford to Howard Peyton and each insurer is responsible in proportion to their respective limits of liability for all amounts due plaintiffs in excess of the amount of insurance afforded under the policy of insurance issued by Security Insurance Company of Hartford to Howard Payton."
*1262 The trial judge filed reasons for judgment as well as supplemental and amended reasons itemizing the various amounts awarded to the plaintiffs. The defendants now appeal this judgment. Furthermore, plaintiff Jones also appeals this judgment requesting an increase in damages.
As for the judgment as it pertains to Jo Ann Findlay, the defendants Howard Payton, Waterfront Haulers, Inc. and Security Reinsurance Company only appeal the award of $100,000.00 given to Mrs. Findlay for her late husband's pre-death pain and suffering. These defendants argue that the trial court's award of $100,000.00 to Mrs. Findlay for her survival action was outrageously excessive and an abuse of discretion. Defendants suggest that the trial court failed to apply the proper standard for assessing damages in a survival action, i.e. the actual damages suffered by the deceased before his death. The defendants also suggest that the trial judge did not properly distinguish between the plaintiff's survival action and wrongful death action.
Mr. Findlay, a seventy-five year old man at the time of the accident, was treated at Charity Hospital for twenty-one days following the accident. He died on the day after his release from the hospital.
In assessing damages in this survival action, the award must be limited to damages for the actual pain and suffering endured by Mr. Findlay in the twenty-two days between the accident and his date of death. Although one of the appellants described Mr. Findlay's injuries as "moderate" and his death on the day after his release from the hospital as "completely unexpected," the record indicates otherwise.
Medical records from Charity Hospital show that Mr. Findlay was admitted to the hospital on the date of the accident with "multiple traumatic injuries." His admitting diagnosis indicated that he suffered a left frontal skull fracture, fractures of three ribs, edema and ecchymoses of the left eyelid, left ear laceration with avulsion of cartilege, chest trauma, abdominal trauma with intra-abdominal hemorrhage, an open globe wound to the right eye, and numerous abrasions. Mr. Findlay underwent surgery for the open globe wound to the right eye. These records also indicate that Mr. Findlay deteriorated mentally in the first few days of his hospitalization and that he suffered periods of disorientation and hallucinations during his hospital stay.
The trial judge noted that Mr. Findlay had been self-sufficient before the accident and had cared for his ailing wife. He lost an estimated fifteen to twenty pounds during his hospitalization. Mr. Findlay died on the day after his discharge and his cause of death was listed as intercranial injuries caused by trauma.
In view of the evidence presented, we find that although the award of $100,000.00 for Mrs. Findlay's survival action is high, it is neither outrageously excessive nor an abuse of the trial judge's discretion. Therefore, we find this claim to have no merit.
In the brief filed on behalf of Mrs. Findlay, counsel argues that the amount awarded to Mrs. Findlay for loss of services, love and affection and for mental anguish and grief is inadequate. However, because this appellee neither answered the appellants' appeal nor appealed independently, this assignment of error will not be considered by this court.
In the case of Dwayne Jones, Sr., et al, the defendants first argue that the trial court abused its discretion in awarding $225,000.00 to the plaintiff for the wrongful death of Tianda Thomas. The basis of defendants' argument is that Dwayne Jones, Jr.'s loss of his mother in this tragic incident is somehow minimized by the fact that he has a close relationship with his father and stepmother with whom he now lives. The defendants also stress the fact that Dwayne Jones' parents never married; therefore, he never had the benefit of a traditional nuclear family.
We reject the defendants' suggestion that the immediate substitution of a stepmother minimizes the trauma suffered by this little boy who lost his mother at the age of three. The testimony revealed that
*1263 Dwayne Jones, Jr. and his mother, Tianda Thomas, had an extremely close and loving relationship. Dwayne's loss of his mother's love and affection is substantial in light of the close bond between this single parent and her only child. Furthermore, Dwayne's loss of his mother at such an early age has deprived him of his mother's love and companionship during his most formative years.
Prior to his mother's death, Dwayne frequently visited his father's home but lived primarily with his mother. Although two psychiatrists who examined Dwayne agree that the good relationship of Dwayne and his father and stepmother has helped him adjust to his loss, the award of $225,000.00 to Dwayne Jones, Jr. for the wrongful death of his mother is not excessive in view of all of the circumstances.
The defendants also argue that the trial judge erred in awarding $50,000.00 to Dwayne Jones, Sr., et al, for the pain and suffering of Tianda Thomas prior to her death. Defendants argue that no evidence was presented to establish that Thomas experienced a period of conscious pain and suffering prior to her death. However, Dr. E. Ralph Lupin, a deputy coroner for Orleans Parish, testified that there was a reasonable probability that Thomas lived for thirty to ninety seconds after she was struck by the container. Additionally, Dr. Richard Tracy, a pathology expert, testified that, in his opinion, Thomas experienced a period of conscious pain and suffering for one to two minutes. Therefore, in light of this evidence, the award of $50,000.00 for Thomas' mental and physical pain and suffering is supportable and was not an abuse of the trial judge's discretion.
Counsel for defendants also argue that the trial court erred in awarding plaintiff $7,926.00 in funeral expenses.[1] Specifically, they argue that no evidence was presented to show that either Dwayne Jones, Jr. or Dwayne Jones, Sr. actually incurred any legal responsibility for payment of this debt. A review of the record reveals that no such evidence was presented at trial. For that reason, funeral expenses should not have been awarded to Jones and the judgment of this court will be amended to eliminate that award.
Additionally, plaintiff argues that the trial judge erred in failing to award damages to plaintiff for past and future child care and household services and past and future financial support. However, because Dwayne's father and stepmother are supporting him and providing these services, there is no error in failing to award damages for these items.
In a brief filed by United States Fire Insurance Company, counsel argues that the trial court erred in concluding that Howard Payton was an employee of Waterfront Haulers, Inc. Counsel contends that Payton was an independent contractor; therefore, Waterfront Haulers is not responsible for his negligent actions.
In finding that Waterfront Haulers is vicariously liable for Payton's negligence in this accident, the trial judge noted as follows:
In finding that Waterfront was the employer of Howard Payton, this Court took into account several factors. He had filled out an application for employment and worked on a part-time basis whenever Waterfront needed extra trucks. There was no written contract between Payton and Waterfront. He was expected to follow their work rules (which he had been provided a copy of) and was paid weekly, with taxes withheld from his checks. Additionally, Waterfront reserved the right to instruct Mr. Payton regarding the method of his work and supervised his job performance. They instructed him on the method to secure the steel cargo containers that he *1264 transported for them. Waterfront provided equipment for Howard Payton. Lastly, the employment relationship between Waterfront and Mr. Payton was terminable at will. While the defendants argue that Mr. Payton was an independant contractor, the Court finds that the facts recited above negate such an argument.
We find that these facts clearly indicate that the trial judge correctly found that Payton was an employee of Waterfront Haulers at the time of the accident and that Waterfront is vicariously liable for Payton's actions.
Counsel for the United States Fire Insurance also argues that the trial court erred in adjudging Waterfront Haulers, Inc. to be independently negligent. In reaching that conclusion, the trial judge reasoned:
Waterfront Hauler, Inc., Mr. Payton's employer, was also at fault in the accident. They had a duty to furnish a trailer which was appropriate for the job assigned and failed to do so. The equipment used to transport the containers was not designed to transport that type of container. They also failed to properly supervise their employee and require compliance with applicable safety regulations and practices. Waterfront knew their drivers did not chain the front containers; however, they failed to take any action to correct this unsafe method of securing the steel cargo containers even though some drivers had expressed concern about this method. Waterfront also violated several provisions of the Federal Motor Carrier Safety Regulations.
In view of these reasons, the trial judge's finding that Waterfront Haulers was independently negligent was not an abuse of discretion.
In addition to other claims urged by co-defendants which have already been addressed, this defendant also argues that the trial court erred in awarding $30,000.00 for future psychiatric treatment for Dwayne Jones, Jr. Although no award has been made to plaintiff for the child's witnessing of his mother's death as suggested by defendant, the psychiatric treatment necessary to deal with the trauma of losing his mother at a very early age is a medical expense which the trial judge correctly found necessary for this child's recovery.
Dr. Edward Shwery, a child psychologist who has treated Dwayne Jones, Jr. since the accident, testified that Dwayne needs intensive psychotherapy to help him deal with anxiety and other emotional problems stemming from his mother's death. Dr. Shwery testified that, in his opinion, Dwayne needs immediate psychological treatment as well as intermittent re-evaluation throughout his childhood and adolescent development. Based on the projections of Dr. Shwery as to costs of future psychological treatment, the trial judge's award of $30,000.00 to the plaintiff for future psychological treatment of Dwayne Jones, Jr. is supportable and was not an abuse of discretion.
Finally, this defendant argues that the trial court's award of $10,000.00 for injuries suffered by Dwayne Jones, Jr. in this accident is excessive. Dwayne was treated after this accident for numerous abrasions and for a concussion. A physician at Charity Hospital also noted that Dwayne was having a withdrawal reaction from this traumatic event. Although the award for these injuries is high, we do not find it to be excessive or an abuse of the trial judge's discretion.
For the reasons stated above, the trial court judgment is amended to reduce the award in favor of Dwayne Paul Jones, Sr. on behalf of his minor child, Dwayne Paul Jones, Jr. and against Howard Payton and Waterfront Haulers, Inc. from $331,274.00 to $323,348.00 together with judicial interest from date of judicial demand until paid and all costs of these proceedings. In all other respects, the trial court judgment is affirmed.
AMENDED AND AFFIRMED.
WILLIAMS, J., dissents in part.
*1265 WILLIAMS, Judge, dissenting in part.
Although I concur with the majority's conclusion regarding the liability aspects of this case, the damages awarded by the trial court appear to be excessive. Damages of this nature are difficult to quantify, and I do not wish to minimize the tragic consequences of this accident. However, it would appear that these particular claimants have been the beneficiaries of awards out of proportion to the mass of awards made to other claimants with similar types of injuries. Although in Louisiana, each case should be judged on its own merits, the awards given by the trial court seem somewhat unfair to other claimants who have recovered only a fraction of the awards made in this case.

ON APPLICATION FOR REHEARING
PER CURIAM.
After reviewing plaintiff-appellee Jo Ann Findlay's application for rehearing, we have determined that we erred in refusing to consider an assignment of error filed by this appellee on the grounds that she had neither appealed independently nor answered the appellants' appeal. A further review of the appeal record reveals that this appellee did file an answer to the appeal on September 9, 1987. Therefore, we are now considering for the first time the assignment of error filed on behalf of appellee Jo Ann Findlay.
In this assignment of error, Mrs. Findlay argued that the amount awarded to her for loss of her husband's services, love and affection and for mental anguish and grief is inadequate. In our original opinion, we affirmed the trial court's award of $100,000.00 for Mrs. Findlay's survival action for pain and suffering endured by her late husband in the twenty-two days between the accident and his date of death. The trial court also awarded Mrs. Findlay $150,000.00 for loss of her husband's services, love and affection and for mental anguish and grief. It is Mrs. Findlay's contention that the evidence at trial supports her argument that this award should be increased to at least $250,000.00.
In his reasons for judgment, the trial judge noted that the Findlays had been married for thirty-five years and that Mrs. Findlay's serious health problems caused her to depend on her husband to take care of her and their home. The trial judge evaluated the testimony presented regarding Mrs. Findlay's health and the care provided to her by her husband prior to his death and determined that an award of $150,000.00 adequately compensated Mrs. Findlay for the loss of her husband's services as well as for her loss of his love and affection and for mental anguish and grief.
In view of the evidence presented, we find that this award was adequate and should not be increased. Therefore, because we find no abuse of the trial judge's discretion on this issue, we find that this assignment of error is without merit.
For these reasons, we affirm the trial judge's award of $150,000.00 to Mrs. Findlay for the loss of her husband's services, love and affection and for mental anguish and grief. In all other respects, our original opinion amending and affirming the trial court judgment remains unchanged.
AMENDED AND AFFIRMED.
WILLIAMS, J., concurs.
WILLIAMS, Judge, concurring.
I concur with the majority's denial of the relief sought by plaintiffs-appellees in their application for rehearing.
NOTES
[1] Counsel for plaintiff argues that LSA-C.C. art. 2315.1(A)(1) specifically authorizes that the surviving children of the deceased have the right to recover all damages from injuries caused by the offense or quasi-offense, including funeral expenses. However, because this article was enacted in 1986, it was not in effect at the time of the accident in question and the code articles in effect at the time of the accident made no specific reference to the recovery of funeral expenses.