| .KUHN, Judge.
Plaintiffs-appellants, Melissa C. Maraist and Patrick E. Maraist, individually and on behalf of their minor daughter, Brittany Maraist, appeal the dismissal of their malpractice claims against defendants-appel-lees, Ochsner Clinic, Lois H. Gesn, M.D., Shaun M. Kemmerly, M.D., and David Kemp, M.D. (collectively the “Ochsner defendants”), by summary judgment. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiffs’ infant daughter, Brittany, was born in October 1991, and received her pediatric care at the Ochsner Clinic of Baton Rouge (the Clinic). Dr. Lois Gesn, her primary care physician, first had contact with Brittany the day after she was born and intermittently administered health care to the infant. In February 1992, Mrs. Maraist contacted the Clinic, reporting to Dr. Shaun Kemmerly, a pediatrician at the Clinic, that Brittany was irritable, suffering with a low-grade fever and restless. On February 10, 1992, Brittany was examined by Dr. Gesn. On February 12th, Mrs. Maraist called the Clinic and spoke with a nurse, advising of Brittany’s continued symptoms. At approximately 3:30 AM on February 13th, Mrs. Maraist once again called the Clinic concerned with her daughter’s health. She spoke with Dr. David Kemp. As a result of that phone call, Mrs. Maraist waited until approximately 9:00 AM to bring Brittany to the Clinic for examination. Dr. Kem-merly immediately administered medical care, and Brittany was transferred to the Medical Center of Baton Rouge (MCBR). Drs. Gesn and Kemmerly advised the Ma-raists that it appeared Brittany was suffering from bacterial meningitis. That diagnosis was subsequently confirmed. Presently, Brittany has profound neurological impairment: she is cortically blind, deaf and entirely reliant on others to provide for her daily needs.
On February 10, 1993, Melissa and Patrick Maraist filed this lawsuit against the Ochsner defendants, as well as MCBR, averring that the respective and collective medical |Rcare and treatment of their infant daughter, Brittany, administered by each of the defendants was substandard. As a result of the alleged substandard care, plaintiffs, individually and on behalf of their minor daughter, claimed that Brittany suffered damages for which the defendants were liable. By an amended petition, plaintiffs additionally asserted that provisions of the Medical Malpractice Act are unconstitutional.
On October 29, 1994, the trial court approved a settlement between plaintiffs and MCBR and its insurer in the amount of $100,000. The settlement expressly reserved plaintiffs’ rights against the Ochs-ner defendants. Plaintiffs compromised their claims against the Louisiana Patients Compensation Fund (the Fund), the statutory intervenor for MCBR, for $400,000 plus interest and future medical expenses. On October 5, 1995, the trial court signed a judgment dismissing the Maraists’ claims against the Fund as the statutory interve-nor for MCBR. Like the settlement agreement with MCBR, the compromise with the Fund expressly reserved plaintiffs’ rights arising from the alleged negligence of the Ochsner defendants.
The Ochsner defendants subsequently filed a motion for summary judgment. Urging that as a result of the settlements with MCBR and the Fund, plaintiffs had been fully compensated under the Medical Malpractice Act, the Ochsner defendants asserted entitlement to a dismissal of *568 plaintiffs’ malpractice claims against them. After a hearing, the trial court concluded the Ochsner defendants were entitled to summary judgment and, apparently, pre-termitted discussion of plaintiffs’ constitutional challenge. On August 5, 1999, the trial court signed a judgment in conformity with its ruling. Plaintiffs appeal.
DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that governs the trial judge’s consideration of whether a summary judgment is appropriate. Terrebonne v. Floyd, 99-1036, pp. 4-5 (La App. 1st Cir. 5/23/00), 767 So.2d 754, 756-757. A |4motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).
Louisiana Revised Statutes 40:1299.42 states in relevant part:
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers ....
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board....
B. (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
(3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient’s compensation fund pursuant to the provisions of R.S. 40:1299.44(0).
(b) The total amounts paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
In support of their motion for summary judgment, the Ochsner defendants submitted certificates of enrollment issued by the Fund for each Ochsner defendant. Each I,.¡certificate certifies that each of the respective Ochsner defendants is “Self Insured”; that “securities of One Hundred, Twenty-Five Thousand ($125,000.00) Dollars in custody of the Louisiana State Treasurer acknowledges financial responsibility” for specified time periods; and that “all surcharges are paid for the indicated periods.” The time periods indicated in each Ochsner defendant’s respective certificate duly covers February 1992, when Brittany allegedly received the substandard medical care. Based on the *569 contents of each certificate, the Ochsner defendants established that each is a qualified healthcare provider in accordance with La. R.S. 40:1299.42A.
Plaintiffs do not dispute, and the record shows, they received $100,000 in settlement proceeds from released defendant, MCBR, a qualified health care provider, as well as $400,000 from the Fund. Relying on the depositions of Drs. Gesn, Kemmerly and Kemp submitted by the Ochsner defendants in support of the motion for summary judgment, and contending that the Ochsner defendants committed separate acts of negligence, plaintiffs assert the trial court erred in dismissing their claims against these defendants. The Maraists suggest that under La. R.S. 40:1299.42, they are entitled to pursue each qualified health practitioner for the full amount recoverable, i.e., $100,000 from each qualified health care provider for the separate act of negligence each committed; as well as $400,000 from the Fund for each Ochsner defendant’s separate act of negligence.
In Turner v. Massiah, 94-2548, p. 7 (La.6/16/95), 656 So.2d 636, 640, the supreme court discussed the application of La. R.S. 40:1299.42 to a trial court’s judgment, based on a jury’s verdict, which concluded that the damages suffered by a Stage-2-breas1^cancer patient were subject to two separate $500,000 limitations of recovery. The defendant health care providers had separately failed to correctly diagnose the patient’s condition. The lower courts had reasoned that because the conduct of the two doctors were unrelated acts of ^negligence and the patient was injured by the unrelated acts of negligence of the two providers, two $500,000 caps applied.
In reversing, the supreme court noted that legal causation in medical malpractice cases is decided under a duty-risk analysis. Id., 94-2548 at p. 6, 656 So.2d at 639. The doctor who first misdiagnosed the patient’s condition subjected plaintiff to the Stage-2-cancer risk of injury. And his misdiagnosis was found by the supreme court to be a cause-in-fact. of the Stage 2 cancer plaintiff was suffering from on the date of trial. According to the Turner court, “[He] could have prevented the damage by making a proper diagnosis. Therefore, he is liable for all damage resulting.” Id. The same analysis applied to the second defendant-doctor. Thus, the supreme court concluded, the negligence of each defendant was the legal cause of the entire harm suffered by the plaintiff and each was liable for all the damages caused. The liability of each defendant tortfeasor for all of the victim’s damages resulted because each doctor was the legal cause of all of the victim’s harm, and was based on more than the imposition of a solidary obligation between joint tortfeasors. Id.
The court indicated that the damage sustained by the plaintiff in Turner, Stage 2 breast cancer, could not be apportioned between two tortfeasors because the damage was not severable, but was indivisible. In concluding that there were two torts but only one injury as contemplated by La. R.S. 40:1299.42B(1), the Turner court stated, “If the damage, or injury, could have been divided into two parts, one part caused by one defendant and the other part caused by the other there would have been, in effect, two injuries,” Id., 94-2548 at p. 7, 656 So.2d at 640, and suggested “the question of two caps [under La. R.S. 40:1299.42B(1) ] might have been present.” The Turner court then concluded, “[f]or one patient and one injury there is but one cap.” Id., 94-2548 at p. 9, 656 So.2d at 641.
17From this expression by the supreme court in Turner, we glean that when the damage cannot be apportioned between multiple tortfeasors because the *570 damage is indivisible, the claim is not sev-erable. Thus, if the damage or injury can be divided into two or more parts, with each part caused by a separate defendant, then each part constitutes, in effect, a separate injury under La. R.S. 40:1299.42B(1). See also Batson v. South Louisiana Medical Center, 99-0232 (La.11/19/99), 750 So.2d 949 (holding that La. R.S. 40:1299.39F of the Malpractice Liability for State Services Act, which sets a $500,000 statutory cap for acts of malpractice committed by state health care providers, does not prohibit a plaintiff from recovering more than one cap for multiple injuries resulting from multiple acts of malpractice which produce separate and independent damages).
The deposition testimony of Drs. Gesn, Kemmerly and Kemp established that Brittany suffered but one injury, bacterial meningitis. Plaintiffs have failed to offer evidence showing that the damages sustained by Brittany could be divided into parts with each part traceable back to a specific delictual origin. While plaintiffs vigorously assert that the failure of the nurses at MCBR to properly monitor Brittany’s condition was merely an aggravation of the damages they suffered as a result of the bacterial meningitis caused by the alleged negligence of (some or all of) the Ochsner defendants, nevertheless they have failed to establish that Brittany suffered more than one injury. Like the Stage-2-breast-cancer patient in Turner, the effect of the malpractice acts, viewed singly or collectively, was not determinable until the bacterial meningitis was discovered. And plaintiffs’ damages could not be calculated, whether caused by MCBR or the Ochsner defendants, with reference to any date other than when the bacterial meningitis was discovered. See Turner, 94-2548 at p. 8, 656 So.2d at 640. Thus, apportionment or separation of the damages caused by MCBR, one of the healthcare providers who treated Brittany, from the damages caused by the Ochsner defendants simply cannot be done.
| sBecause the Ochsner defendants established that Brittany received a single, indivisible injury from which all plaintiffs’ damages flow and the Maraists have recovered the statutory maximum permitted under La. R.S. 40:1299.42B(1), based on the showing made at the hearing on the motion for summary judgment, plaintiffs cannot recover any additional amount from these defendants for the harm Brittany suffered as a result of their respective and collective medical treatment and care of her. Accordingly, we find no error in the trial court’s grant of summary judgment to the Ochsner defendants.
Plaintiffs have, through settlements with MCBR and the Fund, recovered the statutory maximum permitted. Having availed themselves of the maximum amount recoverable under the law, their constitutional challenge of provisions of La. R.S. 40:1299.42B was too late, and we pretermit discussion of that issue.[1] See Ewing v. Aubert, 566 So.2d 616, 619 n. 4 (La.1990).
DECREE
The trial court’s judgment granting summary judgment in favor of defendants, Ochsner Clinic, Lois H. Gesn, M.D., Shaun M. Kemmerly, M.D., and David Kemp, *571 M.D., is affirmed. All costs of this appeal are assessed against plaintiffs, Melissa C. Maraist and Patrick E. Maraist, individually and on behalf of their minor daughter, Brittany Maraist.
AFFIRMED.

. In light of our conclusions that Brittany suffered only one injury as contemplated by the Medical Malpractice Act and that plaintiffs, having recovered the statutory maximum, are no longer entitled to challenge the constitutionality of La. R.S. 40:1299.42B, we find no merit in plaintiffs' contention that the trial court erred in denying them a hearing to challenge the constitutionality of the statutory cap provided for in the Medical Malpractice Act.